(December 13, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT ZEH, Appellant. [734 NYS2d 306] —Carpinello, J. Appeal

from a judgment of the County Court of Ulster County (Sirkin, J.), rendered August 13, 1998, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant stands convicted of the intentional murder of his estranged wife (hereinafter the victim), who was brutally and repeatedly stabbed on the evening of April 11, 1997. While we find that the evidence adduced at the jury trial was indeed legally sufficient to support this conviction (*see, People v Bleakley*, 69 NY2d 490, 495-496), and further reject defendant's claim that pervasive prosecutorial misconduct warrants a new trial, we are compelled to observe that sufficient issues have been raised concerning the adequacy of the representation afforded defendant by his retained trial counsel to warrant CPL article 440 review.

The record reveals that approximately one hour after the victim's body was discovered, four State Troopers went to defendant's home, purportedly to check on his welfare and that of his two young sons. At this time, defendant answered several questions about his whereabouts the previous evening. There is no dispute that these officers did not have a warrant when they entered his home and that defendant was not given *Miranda* warnings prior to being questioned.

The record further reveals that, upon accompanying police to the State Police barracks that same morning, defendant was thereafter questioned for 26 hours by several successive teams of State Police and Bureau of Criminal Investigation investigators. Defendant claims that he was locked in a room during all breaks in questioning and was at times handcuffed and pushed around by certain investigators. He further claims that he was given a prison jumpsuit to wear and that he asked for an attorney at one point but was informed that it was "too late." During this 26-hour time period, defendant apparently gave several inconsistent statements concerning the events of April 11, 1997 and also made other statements which suggested that he in fact committed the crime, although he never specifically confessed. Defendant's statements were heavily relied upon by the People in establishing his guilt at trial.

The record further reveals that search warrants were issued for defendant's home and truck the day after the murder and that various articles of clothing seized pursuant to the warrants later proved quite incriminating. Specifically, tiny specks of blood were found on various seized items and this blood was later determined to be consistent with that of the victim. This evidence was also crucial to the People's case. Finally, there is proof in the record that approximately eight weeks prior to the

victim's murder, defendant, distraught over the breakup of his marriage, was arrested for, *inter alia,* reckless endangerment in the second degree and menacing in the second degree following an incident at his home wherein he allegedly faked a drug overdose and threatened suicide to gain the victim's attention.[1] He was apparently represented by counsel on these charges.

In arguing that his trial counsel was ineffective, defendant emphasizes that not one pretrial motion was ever made on his behalf nor was any suppression hearing requested, including, particularly, a *Huntley* hearing. Indeed, the record confirms that trial counsel never attempted to suppress defendant's oral statements following the alleged warrantless entry into his home and in the absence of *Miranda* warnings, never attempted to suppress his oral statements to police during the 26-hour interrogation despite counsel's apparent belief that same were involuntary,[2] never challenged any search warrant as constitutionally infirm despite allegedly invalid search warrant applications and never sought suppression of statements and physical evidence on the ground that same were obtained in violation of his rights under *People v Cohen* (90 NY2d 632).[3] Although less glaring, the record further reveals that trial counsel never made any discovery requests, never made a general or specific request for *Brady* material (an omission which later became relevant), expressly rejected County Court's offer to give the jury a *Huntley* charge (*but see,* n 2, *supra*) and failed to object to the Assistant District Attorney's repeated characterizations of defendant as a liar in his summation (County Court finally stepped in *sua sponte* and admonished the Assistant District Attorney to discontinue his use of the word "liar" noting that same was "grossly improper").

Given the critical nature of defendant's oral statements to police and the seized physical evidence, the failure to make any pretrial motions is troubling (*see, e.g., People v Gugino,*

1. Of note, these two charges were included in the sole indictment handed up against defendant but dismissed at the close of the People's case.

2. In a motion to vacate the judgment pursuant to CPL 330.30, trial counsel expressed doubt about the voluntariness of defendant's statements to police, pointing out the "uncontradicted" evidence that defendant was locked in the interview room during breaks, handcuffed and shackled at times and dressed in a "jail suit."

3. We are compelled to point out that the Ulster County Public Defender's Office, which is representing defendant on this appeal, initially represented defendant in this matter from May 1997 through December 1997. It appears that no pretrial motions were made or suppression hearings requested by this office either. Under these circumstances, County Court should assign defendant new counsel to pursue any CPL article 440 relief.

132 AD2d 989; *People v Andrew S.,* 108 AD2d 935; *People v Sanin,* 84 AD2d 681). To be sure, a showing that counsel failed to make a particular pretrial motion does not necessarily constitute ineffective assistance of counsel (*see, People v Rivera,* 71 NY2d 705, 709). Rather, to prevail on this claim, a defendant must "demonstrate the absence of strategic or other legitimate explanations for counsel's failure to request a particular hearing * * * [and that a]bsent such a showing, it will be presumed that counsel acted in a competent manner and exercised professional judgment in not pursuing a hearing" (*id.,* at 709). Here, however, this Court is being asked to decide the issue of effective assistance of counsel on direct appeal when many of the claims would require us to resort to "supposition and conjecture" (*id.;* at 709; *compare, People v Langlois,* 265 AD2d 683; *People v Mandigo,* 176 AD2d 386), particularly the claims that no legitimate trial strategy could be advanced for counsel's decision to forego pretrial motions and that defendant's rights under *People v Cohen (supra)* were violated by police during their questioning of him (*compare, People v Grant,* 260 AD2d 860, *lv denied* 93 NY2d 1019). Under these circumstances, prudence dictates that the issue of ineffective assistance of counsel be raised in a posttrial application (*see,* CPL art 440) where "a thorough evaluation of each claim based on a complete record" can be made (*People v Rivera, supra,* at 709; *see, People v Ramos,* 63 NY2d 640, 643; *People v Love,* 57 NY2d 998; *People v Jones,* 55 NY2d 771; *People v Figueroa,* 254 AD2d 226, *lv denied* 92 NY2d 1049).

Mercure, J. P., Peters, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed.